**UNITED STATES**

v.

**Tony ROBINSON, 262 67 1685 Aviation Electrician's Mate Airman (E–3), U.S. Navy.**

**NMCM 86 1378.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 28 Sept. 1985.

Decided 2 April 1987.

**650**

CDR Frederick N. Ottie, JAGC, USN, Appellate Defense Counsel.

CAPT John M. Dillon, USMCR, Appellate Defense Counsel.

CDR Daniel F. Stella, JAGC, USNR–R, Appellate Government Counsel.

LCDR David A. Sabot, JAGC, USN, Appellate Government Counsel.

Before COUGHLIN, Senior Judge, and MIELCZARSKI and DECARLO, JJ.

COUGHLIN, Senior Judge:

After mixed pleas, appellant was convicted at a special court-martial (with enlisted members) of three specifications of wrongful use of marijuana and three specifications of unauthorized absence in violation of Articles 112a and 86, respectively, of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 912a. He was sentenced to confinement for two months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

### I.

The primary issue of concern in this case is whether the military judge erred in denying appellant's request for the production of an expert witness.

On the first day of appellant's trial at Naval Air Station Bermuda, defense counsel moved for the production of one Dr. Cooke, an expert witness from Norfolk, Virginia, who would testify that the level of THC metabolite present in appellant's urine samples, forming the basis for two of the three marijuana use specifications, could have been registered by the passive inhalation of marijuana smoke. The military judge denied the motion on two grounds; first the request was untimely and no good cause was shown for the delay, and second, the information sought to be obtained from Dr. Cooke could be elicited from an expert witness, LCDR Sheeran from the Naval Drug Lab in Jacksonville, who was scheduled to testify for the Government. Appellant contends before this Court that the military judge's refusal to produce Dr. Cooke constitutes reversible error. We agree.

■ With respect to the military judge's first ground for denying the motion, Rule for Courts-Martial (R.C.M.) 703(c)(2)(C), Manual for Courts-Martial, United States, 1984 (MCM, 1984) provides in pertinent part that, "Failure to submit the name of a witness in a timely manner shall permit denial of a motion for production of the witness, but relief from such denial may be granted for good cause shown."

On 26 September, at the initial Article 39(a), 10 U.S.C. § 839(a) session in Bermuda, the individual military counsel (IMC) explained to the military judge that he was made available as appellant's counsel on 6 September and that he (IMC) had received all available urinalysis documents from the detailed defense counsel on 12 September. He immediately forwarded the documents to Dr. Cooke on 13 September. Dr. Cooke reviewed them on 18 September and the IMC contacted him by telephone from Bermuda on 22 September.

As a result of this phone conversation, the IMC determined that Dr. Cooke was not needed. He explained this to the military judge as follows:

> to be honest with you, sir, we did not need his presence at that point. Then

yesterday evening, information came forward which made his testimony relevant at that point. Until that point, sir, his testimony was not tactically useable and was not relative to the defense's position. Information was produced yesterday, or came to my attention which made his avail—made his desirability much more critical, sir.

(R. 10). Thus, the request by the defense for the production of Dr. Cooke as an expert witness was made on the morning following the discovery of new evidence which the defense believed would make Dr. Cooke a necessary witness.

The IMC again contacted Dr. Cooke by telephone on the morning of the initial Article 39(a) session and also prepared a written request for the production of Dr. Cooke as an expert witness (Appellate Exhibit 2), which request was denied by the convening authority prior to the court session. The IMC also informed the military judge that, weather permitting, Dr. Cooke could be available for trial on Saturday, 28 September. Producing Dr. Cooke from Norfolk might have delayed the trial for a few days but it would not have prejudiced the Government's ability to prosecute the case.

Based on the foregoing facts, the military judge erred in finding that no good cause was shown by the IMC to merit relief from the timeliness requirement of R.C.M. 703(c)(2)(C). The defense did not commit an unnecessary delay in requesting the expert witness and the possible defense delay would not interfere with the orderly prosecution of this case. As the Court of Military Appeals observed in *United States v. Hawkins,* 6 U.S.C.M.A. 135, 19 C.M.R. 261, 268 (1955):

> The necessities for having a witness present often do not arise until the trial has proceeded well along toward finality and the touchstone for untimeliness should be whether the request is delayed unnecessarily until such a time as to interfere with the orderly prosecution of the case. Even then, if good cause is shown for the delay, a continuance should be granted to permit the evidence to be produced.

Our conclusion that the military judge erred in determining that no good cause was shown to merit relief from the timeliness requirement of R.C.M. 703, requires us to next examine the second prong of his ruling; that is, the Government offered an "adequate substitute" witness for Dr. Cooke within the meaning of R.C.M. 703(d).[1]

█ When a request is made for the employment of an expert to testify on the accused's behalf at trial pursuant to R.C.M. 703(d), the Government is permitted to produce an "adequate substitute" in place of the particular expert requested by the defense.[2] Neither the rule nor the analysis define the term "adequate substitute."

1. The military judge did not specifically determine that Dr. Cooke's testimony was necessary and relevant. Nevertheless, the record clearly indicates that all parties including the military judge (and now this Court) considered his testimony to be necessary and relevant, based on the IMC's offer of proof, with the only remaining issue being whether the Government could provide an "adequate substitute."

2. R.C.M. 703(d) governs the employment of expert witnesses and provides that:
   (d) *Employment of expert witnesses.* When the employment at Government expense of an expert is considered necessary by a party, the party shall, in advance of employment of the expert, and with notice to the opposing party, submit a request to the convening authority to authorize the employment and to fix the compensation for the expert. The request shall include a complete statement of reasons why employment of the expert is necessary and the estimated cost of employment. A request denied by the convening authority may be renewed before the military judge who shall determine whether the testimony of the expert is relevant and necessary, and, if so, whether the Government has provided or will provide an adequate substitute. If the military judge grants a motion for employment of an expert or finds that the Government is required to provide a substitute, the proceedings shall be abated if the Government fails to comply with the ruling. In the absence of advance authorization, an expert witness may not be paid fees other than those to which entitled under subsection (e)(2)(D) of this rule.

■ We believe that the Sixth Amendment right of an accused to have compulsory process for obtaining witnesses in his favor demands that an "adequate substitute" for a particular requested expert witness at trial not only possess similar professional qualifications as the requested witness, but also be willing to testify to the same conclusions and opinions. To find otherwise would be to effectively foreclose the accused from obtaining favorable expert testimony to counter Government experts testifying against him at trial and would surely amount to a denial of the "raw materials integral to the building of an effective defense." *Ake v. Oklahoma,* 470 U.S. 68, 77, 105 S.Ct. 1087, 1094, 84 L.Ed.2d 53, 62 (1985). *See also Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971). It is within this framework that we examine the military judge's denial of the defense request to produce Dr. Cooke.

■ Defense counsel, in support of his request for the production of Dr. Cooke, made the following offer of proof to the military judge:

IMC: Yes, sir. In a conversation with Doctor Cooke this morning that took place at approximately 10 o'clock this morning, asked him certain questions concerning whether it was feasible for an individual who had metabolite nanogram for the Delta 9 of 20—excuse me, for 70, which refers to Charge I, Specification 1; and then as to Specification 2 where the government has proved the—will be offering evidence that the metabolite for Delta 9 was 90 nanograms, asked him specifically, "Is it feasible that—that levels could be reached by passive inhalation?" If you would, sir.

And, specifically, if the accused were living with a young lady who would be smoking marijuana on two to three times a day, they've lived in close proximity to her, in fact, this same apartment building, whether over an extended period of time, it—was it feasible—was it possible that the levels could be reached through passive inhalation. He indicated that there was that possibility, sir. I believe that information would go to the point where the ingestion of the alleged substance was wrongful, sir. That was the—that would be the basis of the request for his production, sir.

(R. at 7–8).

In addition to this oral offer, defense counsel also submitted to the judge a written offer of proof noting that Dr. Cooke's presence was necessary to counter the expected testimony of the Government's drug expert. Trial counsel, in opposition to the motion argued:

TC: Yes, sir. The position of the government on this is based on two primary points. First is the timeliness of the request by the defense. It is only made on the date of trial for a witness to be brought at great expense and difficulty from a civi—from some distance, the logistical difficulties involved, et cetera. Frankly, sir, the defense has known about this case for a sufficient period of time that if this request was going to be made, it should have been made with sufficient time to have the witness available here, rather than cause delay in the trial. Second, the government feels that there is an expert witness on this area available on the island, Lieutenant Commander from the Naval Drug Lab in Jacksonville, and *in terms of the feasibility of the defense's version of the facts, he could testify as to the same things.* (emphasis added).

MJ: Who is this Lieutenant Commander, trial counsel?

IMC: His name is Sheeran, sir, S–H–E–E–R–A–N, I believe, sir.

MJ: Is this a government witness?

TC: Yes, he is, sir. The government's position, of course, is that scientific feasibility is not something that is a government position or a defense position.

MJ: No. But, I was wondering if he was here as a government witness.

TC: He is, sir.

(R. at 8).

The military judge made the following ruling:

MJ: On the facts presented to me by the defense counsel and Appellate Exhibit 2, which is the motion, and the oral offer of proof, both as to the content of what Doctor Cooke would testify to and the procedure—the defense efforts in contacting him and interviewing him, the defense motion is denied, and for the—I base my decision on, first of all, R.C.M. 703(c)(2)(C), the paragraph entitled "Timed Request." I see nothing here which would prompt me to grant relief. I see no good cause shown to grant relief from the timeliness requirement.

In addition, I would deny the defense request on 703, subparagraph (d). There is nothing presented in the defense motion to me that convinces me that Doctor Cooke is such an expert that would require his specific appearance, that if there is a government witness as proferred by trial counsel, it is my opinion that that witness would also be able to testify to the concept of passive inhalation. That being my ruling, are there any questions by counsel?

TC: Not by the government, sir.

IMC: Yes, sir. Just a bit of additional information, sir. I know you've made your ruling, sir, but I would like to offer one bit of additional information in light of your reasoning, sir, specifically the qualifications of Doctor Cooke, sir. Doctor Cooke is a full professor at the—and department head at Department of Su— Pharmacology Eastern Medical School, Norfolk, Virginia, sir. He has been full professor for 8 years at that particular school, sir. He has been actively involved in urinalysis for over 4 years and has testified in over 25 court-martials, most of which, sir, are on the defense side of it, sir. I believe that he is a qualified expert, sir, and would like that additional matter considered.

Sir, if that does not cause you to alter your decision, I would also like to, at least, offer the possibility of hav—entering into a stipulation of testimony into— where the government—

MJ: Well, as far as that is concerned, you need to take that up with trial counsel.

IMC: Yes, sir. We would, at a later point in trial, of course, renew our request for the production of Doctor Cooke, sir.

MJ: Well, I take your additional information as a renewal for the request—I mean, a request for a reconsideration of the motion and, based on the additional facts that you have furnished—

IMC: Yes, sir.

MJ: —defense counsel, I persist in my original ruling, and your request for that witness is denied—

IMC: Thank you, sir.

MJ: —at this point.

IMC: Yes, sir.

(R. at 10–11).

LCDR Sheeran testified as a Government witness and was cross-examined by the defense. His testimony centered around the procedural and scientific aspects of urinalysis both in general and specifically at the Navy Drug Lab in Jacksonville, Florida. Neither counsel questioned LCDR Sheeran about whether appellant's THC metabolite levels could have been caused by passive inhalation.

We conclude that the military judge erred in determining that LCDR Sheeran was an "adequate substitute" for Dr. Cooke. Dr. Cooke's expected testimony, summarized in the written motion and orally by trial defense counsel, was that it was feasible for the accused by passive inhalation to reach the THC metabolite levels of 70 and 90 nanograms found in his urine. This testimony would go to the heart of appellant's defense by contradicting the Government's assertion that the positive urinalysis test results forming the bases for Specifications 1 and 2 of Charge I resulted from his knowing ingestion of marijuana. The representations made by trial counsel did not provide a legitimate basis for the military judge to determine that LCDR Sheeran would testify in the same manner as Dr. Cooke; that is, that under the prevailing circumstances it was feasible

for appellant to produce these same THC metabolite levels through passive inhalation. Trial counsel merely asserted to the military judge that LCDR Sheeran would testify as to the "same things" as Dr. Cooke with respect to passive inhalation, but did not claim that he would testify the "same way." This distinction is crucial in ascertaining whether the proferred witness was an "adequate substitute". It appears from the wording of the military judge's ruling that the military judge was equally unaware of this crucial distinction since he merely found that LCDR Sheeran "would also be able to testify to the concept of passive inhalation." The fact that LCDR Sheeran would testify as to the "concept of passive inhalation" is a far cry from the legal requirement that he would testify to the same conclusion as Dr. Cooke. Thus, the military judge erred to the substantial prejudice of the accused in denying the defense motion for the production of Dr. Cooke. We shall therefore dismiss the affected charges.

## II.

■ Of secondary concern is the fact that the record of trial in this case is not completely authenticated. The appellant's trial was conducted over four separate days, the first two days being approximately two months apart. A preliminary Article 39(a) session was held on 1 August 1986 at which time appellant was advised of his counsel rights. Appellant expressed a desire to retain individual military counsel and the military judge granted a continuance for that purpose. On 26 September 1986, the trial reconvened with a different military judge. Examination of the record discloses an authentication only by the military judge presiding from 26 September 1986 to the conclusion of appellant's trial.

The failure to authenticate the intial Article 39(a) session constitutes error under R.C.M. 1104(a)(2)(A) which provides that where two or more military judges preside over a court-martial, each judge shall authenticate the portion over which he or she presided. This error, however, does not require us to return the entire record of trial to the initial military judge for authentication of the first four pages because no prejudice to the appellant can possibly flow from such error under the facts and circumstances in this case. *United States v. Remai*, 19 M.J. 229 (C.M.A.1985); *United States v. Skaar*, 20 M.J. 836 (N.M.C.M.R. 1985).

The record of trial is "the very heart of the criminal proceedings and the single essential element to meaningful appellate review." *United States v. Credit*, 4 M.J. 118, 119 (C.M.A.1977). The error in this case, however, does not preclude this Court from performing a meaningful review of appellant's trial. At the initial Article 39(a) session, appellant was advised of his counsel rights and was granted a continuance in order to obtain individual military counsel. When the trial reconvened, the new military judge fully advised appellant, now with individual military counsel, of those same counsel rights. Appellant stated that he understood those rights and expressed the desire to proceed to trial with his individual military counsel. The military judge then proceeded with appellant's court-martial and ensured that appellant was properly arraigned and tried on all charges before the court. That portion of the trial was properly authenticated by the military judge. There is no claim now made that the record of trial is in any way incomplete or inaccurate nor did appellant even raise the lack of authentication issue before this Court. Therefore, while it would have been preferable to have the record of the initial Article 39(a) session properly authenticated, the failure to do so *in this case* will not require returning the record of trial to the initial military judge for authentication. To hold otherwise would be to elevate form over substance and would constitute an unnecessary interference with appellant's interest in receiving a timely review on the merits of his case. *See also United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *United States v. Remai, supra; United States v. Skaar, supra.*

Accordingly, as to Specifications 1 and 2 of Charge I we set aside the findings and dismiss the specifications. We affirm the remaining findings approved on review below and, upon reassessment, we affirm the sentence approved on review below.

Judge MIELCZARSKI concurs.

DECARLO, Judge (dissenting):

I dissent. While I agree with the majority's legal analysis of the requirements of Rule for Courts-Martial (R.C.M.) 703(d) and their finding that the military judge erred in determining that no good cause had been shown for the failure to request Dr. Cooke at a earlier point, I disagree with their finding that the military judge erred in determining that the Government expert witness, LCDR Sheeran, was an adequate substitute for Dr. Cooke.

Dr. Cooke was sought by the defense to testify that, given appellant's close association with a heavy marijuana smoker for several months, it was feasible for appellant's THC metabolite readings to have been caused by passively inhaling marijuana smoke. Both in oral argument on the motion and in his written offer of proof submitted to the military judge, defense counsel made clear that Dr. Cooke was necessary, in part, to counter the expected testimony of LCDR Sheeran, a drug expert scheduled to testify for the Government. In response, the government counsel argued that the testimony of Dr. Cooke was purely scientific in nature and he proffered LCDR Sheeran as an adequate substitute because "in terms of the feasibility of the defense's version of the facts, he [LCDR Sheeran] could testify to the same things." The military judge denied the defense motion to produce Dr. Cooke, stating that,

On the facts presented to me by the defense counsel and Appellate Exhibit 2, which is the motion, and the oral offer of proof, both *as to the content of what Doctor Cooke would testify to* and the procedure—the defense efforts in contacting him and interviewing him, the defense motion is denied ... *if there is a witness as proferred by trial counsel* it

is my opinion that that witness would be able to testify to the concept of passive inhalation. (emphasis added).

I believe that the word "concept", when read in context with the clearly stated positions of government and defense counsel can only be read as being synonymous with the word "feasibility", and I therefore believe that the representations made by trial counsel provided a legitimate basis for the military judge to determine that LCDR Sheeran would testify to the same conclusions and opinions as Dr. Cooke, namely that under these circumstances it was feasible for appellant to produce the THC metabolite levels through passive inhalation. Additionally, the military judge clearly indicated that the motion could be renewed at a later point if facts arose which might alter the premise upon which his initial ruling was based. Defense counsel, however, did not question LCDR Sheeran concerning whether appellant's THC readings could have resulted from passive inhalation nor did he in any way even attempt to indicate to the military judge that LCDR Sheeran was an inadequate substitute. While I do not reach the issue of whether defense counsel's failure to appropriately question LCDR Sheeran constitutes a waiver of the adequacy issue under R.C.M. 703(d), his inaction, at the very least, provides me with no grounds upon which to evaluate the judge's ruling other than the representations made by both counsel on the motion. Based on these representations, the military judge properly denied appellant's motion to produce Dr. Cooke. His ruling that LCDR Sheeran was an adequate substitute constituted a proper exercise of judicial discretion under R.C.M. 703(d). I would approve both the findings and sentence as approved on review below.