**UNITED STATES, Appellant,**

v.

**Christopher W. TRUE, 406 11 4798, Construction Electrician Constructionman Recruit (E–1), U.S. Navy, Appellee.**

**NMCM No. 873657RM.**

U.S. Navy–Marine Corps Court of Military Review.

23 June 1989.

LCdr. Lawrence W. Muschamp, JAGC, USN, Appellate Government Counsel.

Lt. Kevin R. Smith, JAGC, USNR, Appellate Government Counsel.

Lt. Daniel W. Dooher, JAGC, USNR, Appellate Defense Counsel.

LCdr. J.J. Quigley, JAGC, USN, Appellate Defense Counsel.

BYRNE, Chief Judge:

This is a government appeal from a military judge's ruling requiring the convening authority to fund an investigative assistant (a civilian pharmacologist) to provide assistance to the defense in preparing for trial. R. 38, 76. Initially, our Court did not address the issue, as we determined we lacked jurisdiction to entertain the appeal. *United States v. True*, 26 M.J. 771 (N.M.C. M.R.1988). The United States Court of Military Appeals reversed our decision and returned the record of trial to us for further proceedings. *United States v. True*, 28 M.J. 1 (C.M.A.1989). Consequently, we now address the merits of the Government appeal. In ruling that the convening authority had to provide the defense the specific civilian pharmacologist it requested, the military judge used the "similar professional qualifications" standard this Court enunciated in *United States v. Robinson*, 24 M.J. 649 (N.M.C.M.R.1987), in determining that the Government's proposed investigative assistants were not adequate substitutes for Dr. Siegel, the investigative assistant requested by the defense. The military judge determined that none of the Government's proposed investigative assistants were adequate substitutes who had similar professional qualifications to Dr. Siegel. Because the convening authority would not fund Dr. Siegel, the military judge abated the proceedings.

The appellee is pending court-martial for the following offenses: wrongful distribution of lysergic acid diethylamide (LSD); possession of LSD (two specifications); perjury; and unauthorized absence in violation of Articles 112a, 131, and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 912a, 931, and 886, respectively.

### A.

### A DEFENSE REQUEST FOR A PARTICULAR INVESTIGATIVE ASSISTANT

Two of the prospective Government witnesses against appellee were heavy LSD users and had consumed a number of "hits" on the date (4 November 1986) that the appellee was alleged to have distributed and possessed LSD. The defense requested that the convening authority pay $1,000.00 (R. 32) for the employment of Dr. Ronald Siegel, a pharmacologist, "as an expert to aid in the preparation and presentation of the defense case...." Appellate Exhibit III. *See also* R. 32–34. Trial defense counsel requested such funding because:

> ... the defense must have its own expert to assist defense counsel in understanding the very technical issues associated with the effects of LSD on any one given individual. Drug usage, especially LSD because of its varied strands and strengths, will have different effects on individuals merely because everyone has a different physiological makeup. These very technical issues include an evaluation of the drug usage of ... [the two prosecution witnesses], preparation of effective cross-examination, interpretation of lab tests, and possible testimony at trial. Without assistance, defense counsel will not be qualified to effectively rebut the testimony of two of the three main government witnesses.

Appellate Exhibit III.

The request for Dr. Siegel for "possible testimony at trial" was withdrawn. Thus, the focus of our inquiry is upon the request for an investigative assistant; it is *not* a request that a witness testify at trial as an expert.[1] The military judge noted that the

---

1. MJ: My understanding of the request at this stage, is simply, the appointment of an expert assistant to prepare for trial. Is that correct?
DC: Yes, sir.

MJ: Which I suppose would be accurate to say may well lead to a request for production of a witness at the trial?
DC: Yes, sir, I agree with that.
MJ: But we do not have the actual request for a production of an expert witness before the

defense request for investigative assistance was "very reasonable," and that the defense had a need "for someone knowledgeable in the area to assist the defense and perhaps testify at trial." R. 41. The military judge, relying on the standards our Court enunciated in *United States v. Robinson*, 24 M.J. 649 (N.M.C.M.R.1987) (*see* R. 55) stated that the Government would have to employ Dr. Siegel as a defense investigative assistant, unless the Government provided the defense with an "adequate substitute." *Id.; see also* R. 41–42, 55. The Government offered substitutes for Dr. Siegel, but the defense contended that the substitutes offered by the Government did not possess similar professional qualifications to those of Dr. Siegel. R. 32, 33, 36, 104.[2] The list of investigative assistants offered to the defense by the Government included three psychiatrists and one psychologist involved in clinical work treating LSD users. Each was willing to assist the defense in preparing for trial. None had done research in psychoactive drugs. None had degrees in psychopharmacology. Dr. Siegel is a researcher in psychoactive drugs. He possesses a Ph.D. in psychology and has a post-doctoral fellowship in pharmacology. He has written numerous articles and books, mainly reflecting the results of drug experiments with animals.

The military judge, again relying on the standards enunciated in *Robinson* (*see* R. 105), concluded that "the defense has clearly demonstrated the relevancy and necessity for the requested expert services" and that the Government failed to provide an adequate substitute with similar professional qualifications to Dr. Siegel. In elaboration, the military judge stated:

... Looking at the defense request, it obviously was submitted in general terms vice the actual specifics. The primary reason for this, at this point, would appear to be because Doctor Siegel has said, he needs to be paid in advance "Before I give you the real benefit of my expertise." However, the defense's desire and need to explore and determine the actual effects of the admitted LSD ingestion on these two witnesses is not a fishing expedition in my mind. It is a necessary and relevant area of inquiry and very well could be a critical, deciding factor at trial. So I believe the defense has clearly demonstrated the relevancy and necessity for the requested expert services. The government has offered the services of four people as adequate substitutes. But I don't see that any of them possess expertise in what would seem to be the critical area, that is, psychopharmacology. Clearly Doctor Siegel is an expert in this area. I'm not suggesting that the government has to match article for article or degree for degree, the level of expertise of the expert whom the defense desires. But I do believe there must be some showing of requisite qualifications in the pertinent area of expertise and we just don't have that here. I also believe the government has had adequate time to do so. So I'm granting the defense motion for employment of Doctor Siegel as an expert assistant in preparation for trial. By my ruling, I believe, and my comments, I

court anymore, as I understand it. That may or may not be deemed necessary by the defense at a later time, is that correct?
DC: Yes, sir, at this time all we are asking for is an assistant and we do not have any request for production of any expert witnesses in front of the court at this time.
MJ: Very well. Do counsel concur with that brief synopsis of that 802 session?
TC: Yes, sir. I would like to add, however, that defense counsel also indicated that while she would be willing to work with Doctor Siegel at a distance, she would be unwilling to work with the person that has been offered out of California, at a distance.

MJ: Yes, it's my understanding, at least up to this point, that if Doctor Siegel were actually to be appointed by the court, that at least at this point the defense feels that he could do whatever he needs to in preparation for trial in California. Is that a correct understanding, Lieutenant Trafton?
DC: Yes, sir.
R. 75–76.

2. "Sir, we got [sic] one simple issue in front of us today and that is, whether or not the government can provide an adequate substitute who has similar professional qualifications as to the expert that we have asked for, Doctor Siegel."
R. 78.

believe I have addressed the requested essential findings submitted by the trial counsel. I don't believe I have to decide what area the four offered substitutes are experts in. What is pertinent, is what area I have indicated I do not believe they are expert in. . . .

R. 81. *See also* R. 41, 105.

## B.

### ROBINSON REVISITED

In *Robinson,* the defense moved at trial for the convening authority to fund an expert witness to travel to Bermuda for trial. The military judge denied the motion in *Robinson* because, *inter alia,* the information sought to be obtained by the defense-requested expert could be elicited from a Lieutenant Commander Sheeran, from the Naval Drug Laboratory in Jacksonville, who was scheduled to testify for the Government. The defense-requested witness would have testified that, as to two marijuana use charges, there was the possibility of passive inhalation of marijuana of the level reached by Robinson under the facts present in the case. The Government countered that Lieutenant Commander Sheeran could testify "as to the same things" and that "scientific feasibility is not something that is a Government position or a defense position." *Id.,* at 652. The military judge apparently agreed, concluding that there was "nothing presented in the defense motion to me that convinces me that ... [the defense-requested witness] is such an expert that would require his specific appearance, that if there is a Government witness as proffered by trial counsel, it is my opinion that that witness would also be able to testify to the concept of passive inhalation." *Id.,* at 653. At trial on the merits, Lieutenant Commander Sheeran testified as a Government witness and was cross-examined by the defense. His testimony related to the procedural and scientific aspects of urinalysis in general and specifically at the Navy Drug Laboratory in Jacksonville, Florida. Neither counsel questioned him about whether the accused's THC metabolite levels could have been caused by passive inhalation. Senior

Judge Coughlin held that the military judge erred because, although the Government is permitted to provide an adequate substitute expert witness in place of the particular expert witness requested by the defense, the substitute must "possess similar professional qualifications as the requested witness," and "be willing to testify to the same conclusions and opinions." *Id.,* at 652. The Court noted that to find otherwise would be effectively to foreclose the accused from obtaining favorable expert testimony to counter Government experts testifying against him at trial and would amount to a denial to the defense of the "raw materials integral to the building of an effective defense." *Id.* This Court then concluded that the testimony of the defense-requested witness would go "to the heart" of the defense of knowing ingestion of marijuana and that the representations by the trial counsel did not provide a legitimate basis for the military judge to determine that Lieutenant Commander Sheeran would testify in the same manner as the defense-requested witness. The fact that the Government witness would testify as to the "concept of passive inhalation" is a "far cry" from the legal requirement that he would testify to the same conclusions as the defense-requested witness, Senior Judge Coughlin emphasized in dismissing the affected charges. *Id.,* at 654.

## C.

### ROBINSON DISTINGUISHED

*Robinson* involved a request for a necessary and relevant expert witness for defense use on the merits. There was no evidence that the Government witness would testify in the "same manner" as the defense-requested witness. *Robinson,* 24 M.J. at 653. *Qualifications* of the Government expert was not the issue in *Robinson:* the right to have a government witness who is an adequate substitute who would be "willing to testify to the same conclusions and opinions" was the issue. *Robinson,* 24 M.J. at 652. In *Robinson,* such an interpretation was considered necessary to enable the defense to counter Government expert testimony. *Id.*

Construction Electrician Construction-man Recruit True's military lawyer is on a far different journey. She seeks Government help in trial preparation: *i.e.*, in understanding the effects of LSD on two prosecution witnesses, including an evaluation of the drug use of these two prosecution witnesses. Further, she seeks help in preparing effective cross-examination of the Government's witnesses and assistance in interpreting laboratory tests. Appellate Exhibit III. She requested an investigative assistant who happens to be an expert. She is not seeking to counter a proposed adverse Government witness. Thus, *Robinson* is inapplicable to this issue.

## D.

### GARRIES GOVERNS REQUESTS FOR INVESTIGATIVE ASSISTANCE

*United States v. Garries*, 22 M.J. 288 (C.M.A.1986), not *Robinson*, provides the applicable law governing a request for an investigative assistant. Our Court in *Robinson* did not even address the line of cases concerning the right to an investigative assistant,[3] recognizing, we believe, that the legal standards pertaining to a request for an expert witness to testify on the merits is a far cry from a request for an investigative assistant, despite their common source.[4] In *Garries*, the detailed defense counsel requested $1,500.00 from the convening authority to obtain an independent defense investigator. Refused, the defense renewed the request at trial. The defense had been provided with all investigative reports concerning the offenses and the Article 32 investigation. Further, the defense had been offered, and had refused, the services of an Air Force investigator who would work under an order of confidentiality. *Id.*, at 290. The United States Court of Military Appeals then held that service personnel are entitled, as a matter of military due process, to investigative or other expert assistance, when necessary for an adequate defense. The Court then delineated *where* the defense must first look to obtain such services:

> Unlike the civilian defendant, however, the military accused has the resources of the Government at his disposal.... In the usual case, the *investigative, medical,* and other expert services available in the military are sufficient to *adequately prepare for trial.*

*Id.*, at 291. (Emphasis supplied.)

Because the defense in *Garries* did not demonstrate the necessity for the investigative services, the Court concluded that the military judge did not abuse his discretion in denying the request for such services.

## E.

### OBTAINING INVESTIGATIVE SERVICES

■ Accused in the Navy and Marine Corps are entitled to investigative services in order to prepare for trial, but only if they can demonstrate, on the record, the necessity for such services. *Garries*, 22 M.J. at 290. To show the necessity for investigative support, the defense must demonstrate why an investigator is needed, what the investigator would do, and why the defense and its staff could not perform any additional investigative work needed. *Id.*, at 291. Following a successful demonstration of necessity, the accused must accept the services of military investigative services, if they are made available under an order of confidentiality. *Id.*, at 290–91.

■ Only in the very unusual circumstance where the Government, within its own resources, cannot provide investigative services sufficient to enable the defense to prepare *adequately* for trial, will the

---

3. *United States v. Robinson*, 24 M.J. 649 (N.M.C. M.R.1987), was decided nine months after *United States v. Garries*, 22 M.J. 288 (C.M.A.1986), and ten months after *United States v. Mustafa*, 22 M.J. 165 (C.M.A.1986), the two opinions which form the legal foundation for requests for investigative assistance in the military. *See Garries*, 22 M.J. at 290. *Neither* opinion is cited in *Robinson*. Nor is *Garries* cited in our most recent *Robinson*-type case, *United States v. Guitard*, 28 M.J. 952 (N.M.C.M.R.1989).

4. *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); Rule for Courts–Martial (R.C.M.) 703(d).

**1062**

Government be required to fund such services. *Id.*

F.

## CONCLUSION

The military judge erred when he applied the adequate substitute standard enunciated in *Robinson, supra,* in determining that the Government should fund the services of Dr. Siegel, the defense-requested investigative assistant. He should have applied the standards enunciated in *Garries,* 22 M.J. at 288. Under *Garries* (assuming the defense shows the necessity for investigative support), the test is whether any of the experienced psychiatrists or psychologists offered by the Government would have been sufficient to enable the defense, after doing her own research,[5] to adequately prepare for trial.

The Government appeal is granted. The record of trial is returned to the military judge for further proceedings in accordance with this opinion.

Judge ALBERTSON and Judge JONES concur.

---

5. *See Moore v. Kemp,* 809 F.2d 702, 712 (11th Cir.1987). We note that the duty of counsel, whether prosecuting or defending, is to educate themselves concerning any issues involved in their case. Sole reliance on the advice of experts is no substitute for the hard work required to obtain the knowledge necessary to prepare a client's case for trial.