**UNITED STATES**

v.

**Dennis J. MANN, 361 52 4140, Machinist's Mate First Class (E–6), U.S. Naval Reserve.**

**NMCM 88 4804.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 22 Sept. 1988.

Decided 23 Feb. 1990.

Lt. Jeffrey S. Horwitz, JAGC, USNR, Appellate Defense Counsel.

Lt. Rosalyn D. Calbert, JAGC, USNR, Appellate Government Counsel.

William J. Holmes, Esquire, Civilian Defense Counsel.

Before BYRNE, Chief Judge, and ALBERTSON and JONES, Judges.

PER CURIAM:

Contrary to his pleas, appellant was convicted by a military judge sitting alone as a general court-martial of an indecent act with a 4–year–old girl in violation of the Uniform Code of Military Justice (UCMJ), Article 134, 10 U.S.C. § 934. He was sentenced to confinement for 4 years, total forfeitures, reduction to pay grade E–1, and a dishonorable discharge. Upon taking his action in appellant's case, the convening authority stated that "the sentence [was] approved, and except for the part of the sentence extending to a bad-conduct discharge ..." would be executed.

## I

During her morning bath, the alleged victim in this case, 4–year–old Kristi, stated to her mother that her "puki" (vagina) and "puwete" (anus) hurt, because Dennis (appellant) had put his finger there. Appellant had been baby-sitting the child the night before, but the girl was asleep in bed when her mother returned. Kristi was examined the next day at the Naval Hospital in Long Beach, California, and redness in her vulva was discovered. The examining physician opined that Kristi's injuries indicated that child abuse was possible. Nearly 2 weeks later, Kristi was examined by Dr. Elisha Nicholas and Ms. Joyce Chikuma, a physician's assistant, both of whom worked for the Child Crisis Center of the Harbor–UCLA Medical Center. Ms. Chikuma and Dr. Nicholas authored and signed a detailed medical report subsequent to their examination of Kristi, concluding that the medical evidence of Kristi's injuries was consistent with one-time digital or penile penetration of her vagina. At trial, the prosecution's evidence consisted of the testimony of Kristi, her mother, and Ms. Chikuma, who explained and reiterated the conclusions of her report made 2 weeks after the alleged indecent act against Kristi.

 Appellant claims prejudicial error by the military judge in refusing to grant expert assistance to the defense prior to trial. Appellant wanted the Government to provide the services of three medical experts, Dr. Strickland, Dr. Tess, and Dr. Sharma to the defense prior to trial.[1] To obtain such expert assistance, an accused must show that expert assistance is both material and necessary to his case. *United States v. True*, 28 M.J. 1057 (NMCMR 1989); *see United States v. Garries*, 22 M.J. 288 (C.M.A.1986) (and authorities cited therein), *cert. denied* 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986). If materiality and necessity are shown, the accused is entitled to investigative or expert services. "In the usual case, the investigative,

medical and other expert services available in the military are sufficient to permit the defense to adequately prepare for trial," *Garries*, 22 M.J. at 290–291, if they are provided under an order of confidentiality. *See id.* at 291. An accused has no right to demand a particular defense consultant. *See Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *United States v. Mustafa*, 22 M.J. 165 (C.M.A. 1986), *cert. denied*, 479 U.S. 953, 107 S.Ct. 444, 93 L.Ed.2d 392 (1986). An accused must demonstrate to the military judge why the expert assistance is needed, what the assistance would accomplish for the accused, and show the defense counsel's inability to gather and present the evidence that the expert assistant would be able to develop. *True*, 28 M.J. at 1061. The military judge must determine that there is a reasonable probability that the expert services requested would be of assistance and that denial of that assistance would result in a fundamentally unfair trial. *United States v. Van Horn*, 26 M.J. 434 (C.M.A. 1988). Finally, appellate review involves an assessment of the reasonableness of the military judge's ruling at the time he took it, which necessarily turns on the sufficiency of an accused's explanation as to why expert assistance was required. *Moore v. Kemp*, 809 F.2d 702, 710 (11th Cir.1987); *see True*, 28 M.J. 1057.

## II

Appellant argued prior to trial that the services of Dr. Sylvia Strickland, M.D., were necessary to assist him in establishing that the physical evidence garnered from Kristi's medical examination was inconsistent with the testimony of Ms. Chikuma, the physician's assistant who would (and did) testify that the medical evidence was consistent with one-time digital or penile penetration. Appellant claims that Dr. Strickland, the Assistant Medical Director for the Center for Child Protection, Children's Hospital, San Diego, would have provided expertise that would have helped the defense demonstrate that the physical

---

1. We find appellant's assignment of error as it pertains to Dr. Tess and Dr. Sharma meritless. We also note that at trial, appellant withdrew his motion to produce Dr. Strickland as a witness, and limited the issue solely to that of providing Dr. Strickland as an expert assistant.

findings pertaining to Kristi indicated repeated abuse rather than a single instance of abuse. At trial, on the merits, the defense provided the testimony of Dr. Wulfsberg, the Chief of Pediatrics at Balboa Naval Hospital, that the medical evidence neither supported nor refuted even a single incident of digital vaginal penetration. The redness of Kristi's vulva, he opined, was chronic vulvar irritation which could result from repeated sexual abuse, poor genital hygiene or other non-specific factors.

On his motion for expert assistance, trial defense counsel *proffered* that Dr. Wulfsberg did not consider himself an expert in the forensic interpretation of medical records in child abuse cases, and thus would be unable to testify to those conclusions in court, and, additionally, that Dr. Wulfsberg had reached those conclusions based on his study of the report of Ms. Chikuma and Dr. Nicholas, and as a result of a telephone consultation with Dr. Strickland. Trial defense counsel sought government funds so that Dr. Strickland could examine Kristi and her medical records and render a medical opinion concerning the cause of Kristi's injuries in writing, which she would not do unless first paid. Apparently, at no time did any member of the defense team talk directly to Dr. Strickland, and there was no *evidence* before the military judge that Dr. Wulfsberg did not consider himself an expert in the forensic interpretation of medical records in child abuse cases. Pressed by the military judge for *evidence* concerning Dr. Wulfsberg's expertise or lack thereof, trial defense counsel asserted that the defense had a right to develop potentially exculpatory evidence with the assistance of an expert, and that medical evidence which would support a finding of no physical abuse was a possibility here, given the state of the physical evidence concerning Kristi's injuries after appellant's alleged actions.

### III

■ We commend the military judge and counsel involved for their extensive attempt to deal with the complex and thorny issue of an accused's right to government funded expert assistance prior to trial.

When, as here, the prosecution utilizes expert opinion in developing its child abuse case for prosecution, an accused may well be able to make plausible and valid arguments for government or government-funded expert assistance on his behalf to aid in the development and evaluation of factual issues and to ensure his adequate legal representation. *See Ake v. Oklahoma,* 470 U.S. 68, 83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53, 66 (1985). We accept that a medical evaluation of medical reports relating to an alleged child abuse victim, or even of the victim herself, if timely performed, conducted on behalf of the defense by an expert other than the Government's own witness, may be relevant and necessary for the accused's defense. This is particularly true where, as here, the prosecution has utilized expert assistance to develop conclusory *opinions* as to the *cause* of physical injuries suffered by an alleged child abuse victim. This type of conclusion developed by the prosecution is *opinion,* is neither neutral nor non-accusatory, is inherently subjective, and differs in kind from that type of expert assistance, for example, provided by a chemist identifying the components of a substance. *See United States v. Broadnax,* 23 M.J. 389, 396 (C.M.A.1987) (Cox, J., concurring). This type of *subjective opinion* may be challenged by an accused charged with child abuse, and he is entitled to government or government-funded expert assistance to help him do so.

Trial defense counsel's request was for the Government to provide funds to pay for the examination by Dr. Strickland of the medical report authored by Ms. Chikuma and Dr. Nicholas, and to determine whether the physical injuries to Kristi noted in that report were consistent with the report's findings as to their cause. Examination of this medical report by Dr. Wulfsberg, a Navy doctor, did permit appellant to offer evidence to contradict that offered by Ms. Chikuma at trial that Kristi's injuries were consistent with one-time digital or penile penetration. Thus, Dr. Wulfsberg, a Government employee but independent of the prosecution team, did materially

assist appellant's counsel in their preparation for trial.

The critical questions in this case are (a) whether appellant made the requisite showing of need and justification to warrant the expenditure of government funds on his behalf for the services of Dr. Strickland, in turn requiring a look at the substance of the request presented to the military judge; and (b) whether the assistance of Dr. Wulfsberg prior to and at trial was sufficient to assist the defense in adequately preparing and presenting appellant's defense at trial, as contemplated by *Garries* and *True.*

### IV

■ The military judge, in denying appellant's request for expert assistance from Dr. Strickland, premised his ruling on several key findings of fact. The report of examination by Ms. Chikuma and Dr. Nicholas, he found, did not comprise medical evidence either for or against the proposition that Kristi was sexually assaulted, although Dr. Nicholas was prepared to opine that the medical data supported a history of a single episode of traumatic sexual abuse, including digital and/or penile penetration. Dr. Wulfsberg, who examined the Chikuma–Nicholas report, was proffered to opine that the medical evidence neither supported nor refuted even a single incident of digital vaginal penetration, much less sexual abuse. Further, appellant testified on the motion that during the months preceding the alleged offenses, he was alone with Kristi and her brother for 10–20 minutes on about ten different occasions. From this, the military judge concluded that there was no showing of materiality and necessity for the services of Dr. Strickland, because (a) the medical evidence was inconclusive; (b) expert opinion of chronic abuse would not have made out a

defense for appellant because of his admitted opportunities to assault Kristi in the months preceding this alleged offense, even were Dr. Strickland to interpret the medical evidence that way; (c) there was no showing whatsoever, other than the unsubstantiated assertions of the trial defense counsel, that Dr. Strickland, if employed, would have rendered such an opinion of chronic abuse, or that Kristi's injuries were not consistent with a single act of digital and penile penetration of Kristi's vagina; the intimations of the defense that she would have were "pure speculation and wishful thinking ... a fishing expedition, and the government is not required to provide the net", and (d) the defense had not shown how or whether Dr. Strickland's testimony would differ from Dr. Wulfsberg's, or that Dr. Wulfsberg, a Government employee, was not able to provide the expert assistance the defense requested.

■ We conclude that the military judge acted within his discretion in denying the defense motion requesting government funding for the services of Dr. Strickland as an investigative assistant. There was no *evidence* presented to the military judge from which he could conclude that Dr. Strickland could determine that the medical evidence of Kristi's injuries indicated chronic abuse as their cause, or that she could provide more specific expert investigative assistance to the defense than that which had already been provided by Dr. Wulfsberg. Further, it is clear that Dr. Wulfsberg could and did aid the defense in developing its theory of the case; that is, that the medical evidence concerning Kristi's injuries indicated something other than one-time digital penetration of her vagina. The burden to make the proper showing of materiality and necessity for investigative or expert assistance is shouldered by an accused.[2] Here, the accused

2. Appellant's position concerning the necessity for the Government to fund the services of Dr. Strickland contains a fundamental misunderstanding of what the Government is obligated to provide to the defense upon a request for investigative/expert assistance. The Government is not obligated to provide funding to lay the groundwork for an expert witness request, but

is obligated to provide expert assistance so that the defense acquires the knowledge necessary for preparing and presenting its case. Further, the military judge repeatedly told trial defense counsel that proffers of what Dr. Strickland might say did not constitute evidence and could not be considered in determining the motion. In fact those proffers served only to confuse

did not make the requisite showing, and therefore the military judge did not abuse his discretion in denying the defense request.[3] Appellant received the expert assistance to which he was entitled.[4]

Appellant's additional assignments of error are without merit. The findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of the appellant was committed. The appellant was sentenced, *inter alia*, to a dishonorable discharge. The convening authority stated "the sentence is approved, and except for the part extending to a *bad conduct* discharge, will be executed." (Emphasis supplied.) Accordingly, the findings of guilty, and so much of the sentence as provides for reduction to pay grade E–1, total forfeiture of all pay and allowances, confinement for 4 years, and a bad-conduct discharge, are affirmed.

what must be shown to compel production of an expert witness at trial, and what must be shown to obtain government-funded expert assistance prior to trial.

3. Trial defense counsel had not talked directly to Dr. Strickland, but proffered that Dr. Wulfsberg had consulted with Dr. Strickland. He further proffered that Dr. Wulfsberg, who had reviewed the medical report, stated that Dr. Strickland could agree with his conclusions that the medical evidence neither supported nor refuted a single incident of digital or penile penetration, and was most indicative of chronic vulvar irritation which could be the result of repeated sexual abuse, poor genital hygiene or other factors, but that she would not commit her opinion to writing unless she reviewed the report at length, and that she would not do unless first paid. Dr. Wulfsberg admitted during his *trial* testimony that he was not qualified to render a forensic medical opinion regarding the cause of these injuries, but that Dr. Strickland, whom he knew and worked with regularly, was so qualified. Further, Dr. Wulfsberg, *at trial,* testified that as a matter of course, Naval medical officers in San Diego refer alleged child abuse victims to Dr. Strickland for examination and opinion as to the cause of their injuries, much as the Navy medical officials in Long Beach used Dr. Nicholas and Ms. Chikuma in this case. It is these statements of Wulfsberg which might have been critical to the military judge in determining whether the Government was required to fund the services of Dr. Strickland as an expert assistant to the defense prior to trial, but this evidence was not before the military judge when he ruled on this issue. The defense presented no evidence on the motion to the military judge regarding whether Dr. Strickland would "be the least bit inclined" to agree with the opinion of Dr. Wulfsberg. Although there was no way to develop this evidence without first paying Dr. Strickland's fee, and although the military judge refused to consider defense counsel's representations of what she might say, based on her conversations with Dr. Wulfsberg, as evidence on the motion, the representations of defense counsel could have been augmented by the use of a stipulation of expected testimony of Dr. Wulfsberg, who had consulted in greater depth with Dr. Strickland.

4. The military judge imposed a higher standard than necessary, redounding to the benefit of appellant, in that he would not consider the qualifications of defense counsel in assessing their showing of necessity for expert assistance. We believe that the representation of an accused by counsel, one an experienced litigator and the other familiar with medical affairs, is a factor that may be considered in assessing the need for expert assistance.