**UNITED STATES, Appellee,**

v.

**Joseph L. THOMAS 376 64 5006 Sergeant U.S. Marine Corps, Appellant.**

**NMCM No. 891289.**

U.S. Navy–Marine Corps Court of Military Review.

10 July 1991.

---

Maj J.B. GILBERT, USMC, Appellate Defense Counsel.

Maj R.T. MCNEIL, USMC, Appellate Defense Counsel.

LtCol J.S. UBERMAN, USMC, Appellate Government Counsel.

LCDR LAWRENCE W. MUSCHAMP, JAGC, USN, Appellate Government Counsel.

ALBERTSON, Senior Judge:

On consideration of Appellant's Motion to Compel Government Funded Psychosocial Background Investigation filed 4 June 1991, the Government Reply To Motion to Compel Funding filed 11 June 1991, the Appellant's Motion To Respond To Government Reply To Motion To Compel Funding For Background Investigation filed 13 June 1991, Appellant's Motion to File Counsel's Statement Of The Case Status filed 7 June 1991, and Government Reply To Defense Motion To File Statement filed 10 June 1991, it is hereby ordered:

1. That, for the reasons that follow, the Motion to Compel Government Funded Psychosocial Background Investigation is denied without prejudice.

Because of our resolution of the merits of the motion and our desire to exercise judicial economy in a case that needs no further delay, we do not address the issue of whether this Court has authority to compel the funding requested. We are convinced, however, that this Court has authority to determine whether appellant is entitled to the assistance requested, with

other authorities responsible for funding the assistance if we find such an entitlement.

Appellant asks this Court to order the Judge Advocate General of the Navy to provide him with reasonable and necessary funds to hire Mr. Hans Selvog of the National Center on Institutions and Alternatives (NCIA) to conduct a psychosocial evaluation of appellant for $6500.00. The contract with Mr. Selvog would include a personal interview and psychological testing of appellant, visits to Michigan and Florida to interview family members and others who have known and observed appellant throughout his life, and other consultation and evaluation services necessary to discover evidence neglected by trial defense counsel at the trial level. It is contemplated that such professional services would assist appellate defense counsel in completing their assignments of error raising ineffective assistance of counsel on direct and collateral appeals. Appellant claims that attorneys are not trained to recognize the psycho-social traits and elements associated with complex capital litigation issues. As precedent appellant cites the government's retention of Mr. Selvog's organization to conduct a similar background investigation of the appellant in *United States v. Curtis*, whose capital case is presently pending appeal before the U.S. Court of Military Appeals.

Appellant asserts that he is entitled to this expertise because his appointed appellate defense counsel lack the qualifications and resources to conduct the type of investigation that should have been conducted in preparation for trial at the trial level. Additionally, appellant claims that no one in the Appellate Defense Division has such expertise, and that he is unaware of "any government resources capable of conducting a thorough, corroborated background investigation and psychosocial evaluation, and skilled in evaluating the psychoneurological concomitant associated with the act of personal violence for which appellant stands convicted." Simply put, appellant asserts that his ability to protect his Sixth Amendment right to effective representation by counsel at trial is in jeopardy because his appellate defense counsel, appointed pursuant to Article 70, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 870, cannot provide him adequate appellate representation because he does not have a thorough background investigation of appellant's life from which he can determine whether appellant had effective assistance of counsel during the penalty phase of his court-martial. The lack of such information, he asserts, is critical to his defense because, if information was available and trial defense counsel failed to present it, then he can show the Court that trial defense counsel's failure prejudiced the results in his case in that he would not have been sentenced to death.

 Appellant bears the heavy burden of overcoming the presumption that his Article 27(b), UCMJ, 10 U.S.C. § 827(b), appointed and individual military trial defense counsel were competent. *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). As we stated in a previous decision in this case, *United States v. Thomas (I)*, (hereinafter *Thomas I*), 33 M.J. 768 (N.M.C.M.R. 1991), where expertise is required to provide an adequate defense, military due process requires that the expertise be provided. *United States v. Garries*, 22 M.J. 288 (C.M.A.1986), *cert. denied*, 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1987). The defense bears the burden of demonstrating the need for that expertise and that without it, an adequate defense was not provided. *United States v. Allen*, 31 M.J. 572 (N.M.C.M.R.1990), *pet. granted*, 32 M.J. 222 (1990); *United States v. Mann*, 30 M.J. 639 (N.M.C.M.R.1990).

 Appellant asserts, without any particularity, that, without a thorough psychosocial background investigation conducted by an expert, he will not receive an adequate defense on the issue of the effective assistance of his counsel during the penalty phase of his court-martial. Both *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (a death penalty case), and *Garries* presume that the request for expert assistance is for assistance in a sub-

ject or field that is beyond the ken of a competent, diligent attorney who has put forth reasonable effort to recognize, learn, comprehend, understand, or perceive the subject or field as it relates to the facts and circumstances of his particular case. *See United States v. Stark,* 30 M.J. 328 (C.M.A.1990); *Allen.* We acknowledge for purposes of the issue as it is before us presently that a psychosocial investigation is not within the ken of a competent attorney. On the other hand, appellant is required to establish clearly the materiality and necessity of the expert assistance before his request may be favorably considered. As with his request for "death-qualified" counsel, appellant has the burden of establishing clearly and beyond dispute that the expert assistance he is requesting is necessary to ensure him adequate representation, given the particular issues in his case, equal to that burden necessarily carried to justify extraordinary relief. *See Thomas I.*

Appellant's request is based upon mere speculation; he has not identified any factual particularities and again resorts to conceptual generalities and suppositions to bear his burden. For example, appellate defense counsel states: "I have read detailed defense counsel's (Major Renner's) notes in this case, and have concluded that no psychosocial background investigation has been done in preparation for the merits and sentencing phases of this capital trial." Even if we accept the assertion that no psychosocial background investigation was done, appellant identifies no specific factor that would have been uncovered had one been done.

Appellant cites a federal and a state court opinion in support of his petition. We find neither persuasive. In *Douglas v. Wainwright,* 714 F.2d 1532, 1553 (11th Cir. 1983), although the court found ineffective assistance of counsel because of deficient performance during the sentencing phase of the trial, it did so based on appellate defense counsel's presentation of specific facts to support the defense's assertions, *e.g.,* "trial counsel's failure to consult with appellant and other potential witnesses prior to the penalty phase and to investigate and present evidence which might have been considered mitigating." In the state case, *Burris v. Indiana,* 558 N.E.2d 1067, 1076 (Ind.S.Ct.1990), the Indiana Supreme Court held that the defense attorneys' failure to develop and present evidence in mitigation for the penalty phase of their client's capital case and undermining what mitigating evidence they did present constituted ineffective assistance of counsel because the failure undermined the court's confidence in the death sentence adjudged.

When we read the record in appellant's case, however, paying close attention in particular to the performance of trial defense counsel during both the merits and presentencing phases of his trial, we observe none of the concerns about the performance of trial defense counsel during the presentencing phase that were identified by the Indiana Supreme Court in *Burris.* The appellant's record of trial on its face shows no lack of or deficient preparation by the trial defense counsel in the presentation of appellant's case in extenuation and mitigation. There is no indication or assertion that anything relevant for purposes of sentencing was not presented during presentencing, either by inadvertence or design. Trial defense counsel, unlike counsel in *Burris,* made no disparaging comments during trial or presentencing about appellant. There was an effective attempt to present appellant to the members not as a faceless criminal, but as a human being. There were no statements made by the trial defense counsel at any point during the proceedings which in any way were inconsistent with anything previously stated by counsel; and, again, unlike counsel in *Burris,* no bizarre or disparaging closing arguments were made by trial defense counsel in this case.

One of the principal authorities cited by appellant in support of his motion is Goodpaster, "The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases," 58 N.Y.U.L.Rev. 299 (May 1983), wherein the author sets forth two requirements in the mitigating phase of sentencing: the client must be presented as a human being, and the client must actively

cooperate with the lawyer, both of which require counsel to develop an effective relationship with his client and to investigate the client's life. Again, our initial review of appellant's record, particularly the sentencing phase, reveals that trial defense counsel put on extensive extenuation and mitigation evidence, including the testimony of family and non-family witnesses, among them an ex-wife, all of whom described appellant's personal and professional background from the time he was born through the time of trial. They testified as to his non-violent manner, his potential for rehabilitation and ability to be a productive individual even in prison. A chaplain testified as to appellant's strong religious convictions, concern for his family, and his ability to be a productive member of society. All of this indicates that appellant and his trial defense counsel had an effective relationship and that counsel investigated client's life. Mr. Goodpaster says that counsel's investigation must include

> an inquiry into the client's childhood, upbringing, education, relationships, friendships, formative and traumatic experiences, personal psychology, and present feelings. The affirmative case for sparing the defendant's life will be composed in part of information uncovered in the course of this investigation. The importance of this investigation, and the thoroughness and care with which it is conducted, cannot be overemphasized.

*Id.* at 324. The record reveals that defense counsel presented extenuation and mitigation evidence that was focused on a central theme of a loving, caring bright young man that substantially met all of the concerns identified by Mr. Goodpaster and was consistent with the defense theory in the findings phase of the case. "Allegations of representation so inadequate as to amount to a constitutional defect must be supported by more than speculative argument." *People v. Durham,* 70 Cal.2d 171, 74 Cal.Rptr. 262, 275, 449 P.2d 198, 211 (1969).

■ Appellant's record of trial itself does not reveal any deficiency in representation on its face. *See Douglas v. Wainwright,* 714 F.2d 1532. Also unlike *Douglas,* appellant's record does not reveal a counsel ineffectiveness that "cries out." *Id.* at 1557. We also cannot presume that, because some information bearing on every item listed by Goodpaster as a necessary inquiry does not appear in the record, such omission constitutes trial defense counsel inadequacy, *see People v. Frierson,* 25 Cal.3d 142, 158 Cal.Rptr. 281, 599 P.2d 587 (1979); *People v. Durham,* since the presumption of competency of counsel includes counsels' having adequately investigated their client's life. It logically follows from that presumption that no other mitigating or extenuating evidence could have been produced by trial defense counsel. Therefore, we conclude that, to prevail in his request for government funding of a psychosocial background investigation, appellant must at least identify some psychosocial factors in his background which, if his defense counsel had discovered them and presented evidence of them to the court, the outcome on sentencing might reasonably have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Bono,* 26 M.J. 240 (C.M.A.1988); *United States v. Hullum,* 15 M.J. 261 (C.M.A.1983); *United States v. Sadler,* 16 M.J. 982 (A.C.M.R.1983). To require psychosocial background investigations based on mere conjecture would be tantamount to a judicial license for a paid fishing expedition.

■ Appellant has fallen far short of meeting his burden. No evidence before us suggests that the requested expert would uncover anything to add to the extensive information already in the record. Appellant's general assertions regarding uniqueness of the sentencing phase of a death penalty case are insufficient to establish the necessity and materiality of the expertise he is requesting.

2. That the Defense Motion to File Counsel's Statement of Case Status is granted but that any forthcoming motion to respond to this Court's order to file pleadings by 5 August 1991 remains effec-

tive until good cause is shown that enlargement of time is required.

Judge LANDEN and Judge LAWRENCE concur.